The Jewell Pure Water Company, Respondent, v. Kansas City Towel & Laundry Co., Defendant; Harkness & Russell, Garnishees, Appellants.

Kansas City Court of Appeals, March 7, 1898.

Chattel Mortgages: MORTGAGEE'S PURCHASE: FORECLOSURE: ACCOUNTING. A mortgagee in a chattel mortgage may purchase at his own sale where such mortgage grants such right, and the fact that property is bid in by a third party who holds it in trust for the mortgagee to be conveyed as he may direct, will not warrant an accounting by the mortgagee in the absence of fraud in the sale.

*Appeal from the Jackson Circuit Court.*—Hon. J. H. Slover, Judge.

Reversed.

L. A. Laughlin for appellants.

(1) As the sale under a chattel mortgage is for the benefit of the mortgagee, if he sees fit to give credit

to a purchaser, it is not ground for avoiding the sale. The mortgagee who sells for credit must account for the amount of the sale as cash.    Williams v. Hatch, 38 Ala. 338; Warren v. His Creditors, 3 Wash. St. 48. (2)    Harkness & Russell had an undoubted right to purchase at the sale, as the mortgage gives them that right.    Parker v. Roberts, 116 Mo. 657; Clarkson v. Mullin, 52 Mo. App. 622.

LATHROP, MORROW, FOX & MOORE for respondents.

Presented an able argument on the facts and the agency of White.

SMITH, P. J.—The Kansas City Towel & Laundry Company, which, for convenience, will hereafter be designated the laundry company, executed to its general manager a mortgage covering its entire plant to secure certain notes aggregating $4,100, which notes were transferred to the garnishees whom we shall hereinafter refer to as mortgagees.    The laundry company made default in the payment of the said notes at maturity and thereupon the mortgagees, under the power conferred by the terms of the mortgage, proceeded to sell the laundry plant at public vendue.    Immediately after the sale the plaintiff caused the mortgagees to be garnished.    The issues between the plaintiff and the garnished mortgagees were duly referred.    The referee, as appears from his report, found for the plaintiff and there was judgment accordingly for plaintiff.    After the usual motions, in which the mortgagees were unsuccessful, they appealed.

The evidence to the effect that Mr. Laughlin, acting as attorney for the mortgagees, sold the laundry plant

in conformity to the power conferred by the provisions of the mortgage is undisputed. Nor is it questioned that White bid in the said plant at and for the sum of $5,100. If White was acting for one Brown in making the purchase, as is contended by plaintiff, the latter it appears refused to be bound thereby, or to accept the property, or pay the purchase price. The referee found there was no actual public sale but a subsequent private sale by the mortgagees to Brown for $6,000. It appears that when the sale was made by Mr. Laughlin for the mortgagees to White that a conveyance of the laundry plant was accordingly executed to him by them. But it does not appear that Brown furnished White the money with which to pay the amount bid by him. It does however appear that White drew his check for the purchase price in favor of the mortgagees and on them and that this check was by them accepted.

It does not appear that White had any funds on deposit with the mortgagees out of which the former's check could be paid, still the check was accepted by them as payment. The clear and unmistakable inference to be drawn from these facts is that under some undisclosed agreement entered into between White and the mortgagees the former was to buy in the laundry plant for the latter and convey the same to whomsoever the latter should direct. It is true that one of the mortgagees testified that there was no arrangement or understanding with White by which they were to accept his check on themselves for the purchase price. It does not appear that White was a man of any pecuniary responsibility and it is incredible that the mortgagees, as prudent bankers and business men, as we must presume them to be, would have accepted the check of White on themselves as payment of the purchase price of the laundry plant when he had no funds

on deposit with them, without some previous agreement for that purpose having been entered into.

White, it seems, bid the amount of the mortgagees' debt. It does not appear that there was any other bid made. This is an additional circumstance tending to show that White was acting for the mortgagees. The fact that Brown did not intend to pay cash entirely for the laundry, if he purchased, is another circumstance which tends to prove that White was not acting for him in making the purchase but for the mortgagees. The sale was according to the terms of the mortgage for cash. No doubt the understanding was that White should purchase the laundry plant for the mortgagees and that the former, by direction of the latter, was, upon satisfactory arrangements being entered into between such latter and Brown, to convey the same to Brown. But it appears that after the purchase by White, Brown, under the advice of his attorneys, became suspicious of the title and declined to accept a title from White, or to purchase the property without the title was personally guaranteed by the mortgagees. This we infer caused a change of the prearranged plan of procedure in respect to the transfer of the title. Accordingly, the mortgagees themselves took a transfer of the property from White and then transferred it to Brown, with a guaranty of title, for the increased consideration of $6,000.

The integrity of the sale made by Mr. Laughlin is not assailed, but it is insisted it was incomplete and therefore ineffectual. We discover no grounds upon which this contention can be sustained. CHATTEL mortgages: mortgagee's purchase: foreclosure: accounting. It is as plain to us as anything can be, that White was acting for the mortgagees in making the purchase, and that it was understood between them that the former was to hold the title in trust for the latter and transfer it to Brown

or to anyone else that such latter should require. There was a provision in the mortgage that gave the mortgagees the right to purchase the property at a sale thereof made by them under its provisions. The exercise of this right by a mortgagee under such a provision can not be questioned in this state. Clarkson v. Mullin, 62 Mo. App. 622; Parker v. Roberts, 116 Mo. 657. The whole transaction was no more than an indirect purchase of the mortgaged property by the mortgagees at a sale made by themselves under the provisions of the mortgage. As they could have purchased directly there is no reason seen why they could not have done so indirectly. The purchase made by White had the effect to forclose and cut off the equity of redemption of the laundry company. As long as this sale stands unimpeached for fraud or for other reasons the mortgagees can not be required to account for any amount in their hands in excess of their mortgage debt, received of Brown as a consideration for the transfer of the property by them to him. They made the sale to White as mortgagees and to Brown in an individual capacity. In the former case there would be liability if there was an excess above the debt and costs but not so in the latter for the reasons already sufficiently stated.

We do not think there is any substantial evidence to sustain the finding of the referee, and for that reason the judgment of the court based thereon must be reversed. All concur.